United States District Court
District of New Jersey

UNITED STATES OF AMERICA        :    Hon. Esther Salas

v.                                :    **CRIMINAL COMPLAINT**

JUAN POLANCO
JONATHAN CAPPACIO a/k/a "HARRY"      :    Magistrate No.  11-7026

       I, Margarita Abbattisscianni , the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.  From at least as early as September 1, 2010 through on or about January 25, 2011, in Essex county in the District of New Jersey and elsewhere, the defendants did:

Count 1

       knowingly and intentionally conspire and agree with others to distribute and possess with intent to distribute 500 grams or  more of a mixture or substance containing a detectable amount of cocaine, its salts isomers, and salts of its isomers a Schedule II  controlled substance, contrary to Title 21, United States Code, Section 841(a)(1) and 841 (b)(1)(A), and in violation of Title 21, United States Code, Section 846.

Count 2

       knowingly and intentionally conspire and agree with others to distribute and possess with intent to distribute 50 grams of more of methamphetamine, its salts isomers, and salts of its isomers a Schedule II controlled substance, contrary to Title 21 United States Code Section 841(a)(1) and 841 (b)(1)(A), and in violation of Title 21, United States Code, Section 846.

       I  further state that I am a Special Agent with Drug Enforcement Administration and that this complaint is based on the following facts:

         SEE ATTACHMENT A

                             Margarita Abbattisscianni
                             Special Agent
                             Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

January _____ 2011 _____          at          Newark, New Jersey _____
Date                                                                    City and State


Hon.  Esther Salas _____                                   _____
United States Magistrate Judge                              Signature of Judicial Officer

ATTACHMENT A

I, Margarita Abbattiscianni, am a Special Agent with the Drug Enforcement Administration and based upon my investigation and my discussions with other individuals involved in this investigation, I have knowledge of the following facts:

1. On or about September 1, 2010 a confidential informant hereinafter ("CI") engaged in a telephone conversation with JONATHAN CAPACCIO a/k/a "HARRY". This CI has been used throughout this investigation and has continuously provided credible, reliable information which has been verified by law enforcement. During that conversation JONATHAN CAPACCIO a/k/a " HARRY" informed the CI, in sum and substance, that JUAN POLANCO wanted to meet with him that day at a location in Newark, New Jersey to discuss future narcotic transactions.

2. At approximately 3pm on September 1, 2010 the CI met with JUAN POLANCO and law enforcement was conducting surveillance of this meet. At this meet, JUAN POLANCO informed the CI, in sum and substance, that he had a shipment of cocaine coming in and would be able to give CI 1-3 kilograms of cocaine on consignment. Additionally, JUAN POLANCO told the CI, in sum and substance, that JONATHAN CAPACCIO a/k/a "HARRY" would contact the CI when it was time to pick up the narcotics.

3. On or about October 4, 2010 the CI met with JONATHAN CAPPACIO a/k/a "HARRY" at an agreed upon location in Newark, New Jersey. This meet was audio recorded by the CI and listened to by law enforcement. During this meet JONATHAN CAPPACIO gave the CI approximately one kilogram of cocaine and informed him, in sum and substance, that more would be available soon. The substance given to the CI by JONATHAN CAPPACIO a/k/a "HARRY" field tested positive for cocaine.

4. On or about November 4, 2010 the CI and JUAN POLANCO met. During this meet, which was audio recorded, JUAN POLANCO, in sum and substance, acknowledged that the one kilogram of cocaine he had JONATHAN CAPPACCIO a/k/a "HARRY" deliver to CI was poor quality and apologized. Additionally JUAN POLANCO, in sum and substance, offered to provide the CI with more cocaine.

5. On or about January 4th, 2010 the CI met with JUAN POLANCO. During the meeting, which was audio recorded, JUAN POLANCO told the CI, in sum and substance, that he had some "meth", referring to methamphetamine, he was trying to get rid of and asked the CI, in sum and substance, if he knew of any buyers. The CI responded by telling JUAN POLANCO, in sums and substance, that he was willing to try and sell it for him.

6. On or about January 14th, 2010, during a consensually recorded telephone conversation, JONATHAN CAPPACCIO a/k/a "HARRY", informed the CI, in sum and substance, that he was in possession of the "meth" that JUAN POLACO had received, and was going to give the CI some of it.

7. On or about January 24, 2011, during a consensually recorded telephone conversation, JONATHAN CAPPACCIO a/k/a "HARRY", told the CI, in sum and substance, that JUAN POLANCO said it was ok for him to give the CI some "methamphetamine".

8. On January 25, 2011 during a recorded conversation JONATHAN CAPPACIO a/k/a "HARRY", in sum and substance,  agreed to meet the CI to deliver a quantity of "methamphetamine". While waiting for the CI, JONATHAN CAPPACIO a/k/a "HARRY"  was approached by members of law enforcement who recovered approximately 100 grams of "meth" from him.  This substance field tested positive for methamphetamine.